IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Civil Action No. <u>2:10-cv-438</u> |
| ) | |
| AMERICAN MUNICIPAL POWER, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of the United

States Environmental Protection Agency ("U.S. EPA"), alleges:

## NATURE OF THE ACTION

1.      This is a civil action brought against American Municipal Power, Inc. ("AMP" or

"Defendant") pursuant to Sections 113(b) and 167 of the Clean Air Act ("CAA" or "the Act"), 42

U.S.C. §§ 7413(b) and 7477, for injunctive relief and the assessment of civil penalties for violations

of the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-

7492, the nonattainment New Source Review ("NSR") provisions of the Act, 42 U.S.C. §§ 7501-

7515, the New Source Performance Standards ("NSPS"), 42 U.S.C. § 7411, Title V of the Act, 42

U.S.C. § 7661-7661f, and the State Implementation Plan ("SIP") adopted by the State of Ohio and

approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410.

2.　　　Defendant modified, and thereafter operated, its electric generating units at the R.H. Gorsuch Generating Station ("Gorsuch Station"), a coal-fired power plant located in Washington County, Ohio, without obtaining appropriate permits authorizing the modification and subsequent operation of modifications at these units, and without installing and employing the best available control technology ("BACT") or achieving the lowest achievable emissions rate ("LAER"), as required by the Act, to control emissions of sulfur dioxide ("$SO_2$"), nitrogen oxides ("$NO_x$"), and/or particulate matter ("PM"), as required by the Act.

3.　　　As a result of Defendant's operation of the Gorsuch electric generating units following these unlawful modifications, large amounts of $SO_2$, $NO_x$, and/or PM pollution each year have been, and still are being, released into the atmosphere.  Defendant has also operated its electric generation units at the Gorsuch Station while exceeding opacity limitations set forth in its Title V permit for the plant.

## JURISDICTION AND VENUE

4.　　　This Court has jurisdiction of the subject matter of this action pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

5.　　　Venue is proper in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations occurred and are occurring in this District, the facilities at issue are operated by Defendant in this District, and Defendant resides in this District.

NOTICES

6.    EPA issued Defendant a Notice of Violation on March 30, 2009 and provided a copy of this Notice to the State of Ohio, as required by Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

7.    The United States is providing actual notice of the commencement of this action to the State of Ohio as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

8.    The 30-day period established in 42 U.S.C. § 7413, between issuance of the Notice of Violation and commencement of this action, has elapsed.

THE DEFENDANT

9.    Defendant owns and operates the Gorsuch Station located in Marietta,  Ohio.  The Gorsuch Station is comprised of four coal-fired electric generating units: Unit 1, Unit 2, Unit 3, and Unit 4.

10.    Defendant is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

STATUTORY BACKGROUND

11.    The Clean Air Act is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population.  Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

The National Ambient Air Quality Standards

12.     Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of U.S. EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued pursuant to Section 108 of the Act, 42 U.S.C. § 7408.  The primary NAAQS are to be adequate to protect the public health with an adequate margin of safety, and the secondary NAAQS are to be adequate to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

13.     Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data.  An area that meets the NAAQS for a particular pollutant is an "attainment" area.  An area that does not meet the NAAQS is a "nonattainment" area.  An area that cannot be classified due to insufficient data is "unclassifiable."

14.     Defendant's Gorsuch Generating Station is located in Washington County, Ohio. Prior to 2004, Washington County had been classified as in attainment or unclassifiable for $NO_x$ and/or ozone.  From 2004 to the 2007, Washington County was designated as a nonattainment area for ozone, but after 2007 Washington County was designated as in attainment for ozone.  Washington County was classified as a nonattainment area for $SO_2$ from 1978 to 1994 and as in attainment since 1994.  From 1978 to 1994, Washington County was designated as a nonattainment area for PM. From 1991 to the present, Washington County was an unclassifiable area for $PM_{10}$.  Washington County is currently designated as a nonattainment area for $PM_{2.5}$.

4

15.     Pursuant to 42 U.S.C. § 7410, each State must adopt and submit to U.S. EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS.

The Prevention of Significant Deterioration Requirements

16.     Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration (PSD) of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS.  These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process.  These provisions are referred to herein as the "PSD program."

17.     Section 161 of the Act, 42 U.S.C. § 7471, requires that each applicable SIP contain a PSD program.

18.     A state may comply with Section 161 of the Act by having its own PSD regulations approved as part of its SIP by U.S. EPA, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166.

19.     If a state does not have a PSD program that has been approved by U.S. EPA and incorporated into the SIP, the federal PSD regulations set forth at 40 C.F.R. § 52.21 shall be incorporated by reference into the SIP.  40 C.F.R. § 52.21(a).

20.     In 1980, U.S. EPA incorporated by reference the provisions of 40 C.F.R. § 52.21(b) through (w) into the Ohio SIP at 40 C.F.R. § 52.1884.  45 Fed. Reg. 52,676, 52,741 (Aug. 7, 1980).

In 2003, U.S. EPA fully approved Ohio's PSD SIP provisions, found at Ohio Admi. Code 3745-31-11 to 3745-31-20. 68 Fed. Reg. 2909 (Jan. 22, 2003).

21.     Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an attainment area unless a permit has been issued that comports with the requirements of Section 165 and the facility employs the best available control technology ("BACT") for each pollutant subject to regulation under the Act that is emitted from the facility.  Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil-fuel fired steam electric plants of more than two hundred and fifty million British thermal units ("BTUs") per hour heat input and that emit or have the potential to emit one hundred tons per year or more of any pollutant to be "major emitting facilities."

22.     Section 169(2)(c) of the Act, 42 U.S.C. § 7479(2)(C), defines "construction" as including "modification" (as defined in Section 111(a) of the Act).  "Modification" is defined in Section 111(a) of the Act, 42 U.S.C. § 7411(a), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

23.     Applicable provisions in the PSD regulations in the Ohio SIP have at all relevant times prohibited a major stationary source from constructing a major modification in an area designated as unclassifiable or in attainment without, among other things, obtaining a PSD permit, undergoing a   BACT determination, and applying BACT pursuant to such determination for each relevant pollutant.  The definitions contained in the PSD regulations have at all relevant times defined "construction" to include "any physical change or change in the method of operation"  which "would result in a change in actual emissions."  These regulations have at all relevant times also defined

6

"major modification" to include "a physical change in or change in the method of operation of a major stationary source that would result in a significant net emissions increase of any pollutant subject to regulation under [the Clean Air Act]."  These regulations have at all relevant times defined "major stationary source" to include fossil fuel-fired steam electric plants of more than 250 million BTUs per hour heat input.

The Nonattainment New Source Review Requirements

24.     Part D of Title I of the CAA, 42 U.S.C. §§ 7501-7515, sets forth provisions for New Source Review "NSR" requirements for areas designated as nonattainment for purposes of meeting the NAAQS standards.  These provisions are referred to herein as "Nonattainment NSR."  The Nonattainment NSR program is intended to reduce emissions of air pollutants in areas that have not attained NAAQS so that the areas make progress towards meeting the NAAQS.

25.     Under Section 172(c)(5) of the Nonattainment NSR provisions of the CAA, 42 U.S.C. § 7502(c)(5), a state is required to adopt Nonattainment NSR SIP rules that include provisions that require that all permits for the construction and operation of modified major stationary sources within nonattainment areas conform to the requirements of Section 173 of the CAA, 42 U.S.C. § 7503. Section 173 of the CAA, in turn, sets forth a series of requirements for the issuance of permits for major modifications to major stationary sources within nonattainment areas.  42 U.S.C. § 7503.

26.     Section 173 of the Act, 42 U.S.C. § 7503, provides that construction and operating permits may only be issued if, *inter alia*, (a) sufficient offsetting emission reductions have been obtained to reduce existing emissions to the point where reasonable further progress towards meeting the NAAQS is made; and (b) the pollution controls to be employed will reduce emissions to the lowest achievable emission rate ("LAER").

7

27.     In 1980, U.S. EPA conditionally approved Ohio's Nonattainment NSR rules. 45 Fed. Reg. 72,119, 72,122 (Oct. 31, 1980). These rules were codified at Ohio Admin. Code Chapter 3745-31-01 through 3745-31-08. In 1993, U.S. EPA approved revisions to Ohio's Nonattainment NSR Rules. 58 Fed. Reg. 47,211 (Sept. 8, 1993). The Nonattainment NSR rules as further amended in 2001 and 2003, are now codified at Ohio Admin. Code Chapter 3745-31-01 through 3745-31-29. 40 C.F.R. § 52.1870(c)(83).

28.     Under Ohio's approved Nonattainment NSR SIP Rules, no person may undertake a major modification of an existing major stationary source in a nonattainment area without obtaining a Nonattainment NSR permit to install and meeting LAER. For purposes of Ohio's Nonattainment NSR program, the definitions of "construction," "major modification," and "major stationary source" are the same as the definitions set forth *supra* for the PSD program in Paragraphs 22 and 23.

New Source Performance Standards

29.     Section 111(b) of the Act, 42 U.S.C. § 7411(b), requires EPA to promulgate regulations establishing federal standards of performance for new sources of air pollutants. "New sources" are defined as stationary sources, the construction or modification of which is commenced after the publication of the regulations or proposed regulations prescribing a standard of performance applicable to such source. 42 U.S.C. § 7411(a)(2). These standards are known as New Source Performance Standards ("NSPS").

30.     Section 111(e) of the Act, 42 U.S.C. § 7411(e), prohibits an owner or operator of a new source from operating that source in violation of a NSPS after the effective date of the applicable NSPS to such source.

31.     Pursuant to Sections 111 and 114 of the Act, 42 U.S.C. §§ 7411, 7414, U.S. EPA promulgated 40 C.F.R. Part 60, Subpart A, §§ 60.1 - 60.19, which contain general provisions regarding NSPS.  40 C.F.R. § 60.1 states that the provisions of 40 C.F.R. Part 60 apply to the owner or operator of any stationary source which contains an affected facility, the construction or modification of which is commenced after the publication in Part 60 of any standard (or, if earlier, the date of publication of any proposed standard) applicable to that facility. 40 C.F.R. § 60.2 defines "affected facility" as any apparatus to which a standard is applicable.

32.     "Modification" under the NSPS regulations is defined as "any physical change in, or change in the method of operation of, an existing facility which increases the amount of any air pollutant (to which a standard applies) emitted into the atmosphere by that facility or which results in the emission of any air pollutant (to which a standard applies) into the atmosphere not previously emitted." 40 C.F.R. § 60.2. Under 40 C.F.R. § 60.14, upon modification, an existing facility becomes an "affected facility" for which the applicable NSPS must be satisfied

Title V

33.     Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources."  The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act are collected in one place.

34.     Ohio's Title V operating permit program was granted approval by EPA on August 15, 1995, and is codified at Ohio Admin. Code Chapter 3745-77.

35.     Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and the Ohio Title V operating permit program have at all relevant times made it unlawful for any person to operate a major source except in compliance with a permit issued under Title V.

36.     Section 503(c) of the Act, 42 U.S.C. § 7661b(c), the Title V regulations at 40 C.F.R. §§ 70.5(a), (c), and (d), and the Ohio Title V program have at all relevant times required the owner or operator of a source to submit an application for a Title V permit that is timely and complete and which, among other things, identifies all applicable requirements (including any requirement to meet BACT pursuant to PSD or LAER pursuant to Nonattainment NSR, and to comply with NSPS), certifies compliance with all applicable requirements, and contains a compliance plan for all applicable requirements for which the source is not in compliance.

37.     Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the Act, 40 C.F.R. § 70.2, and the Ohio Title V operating permit program regulations have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Clean Air Act and the requirements of the applicable SIP, any applicable New Source Review requirement to comply with an emission rate that meets BACT or LAER, and any applicable NSPS requirement.

## ENFORCEMENT PROVISIONS

38.     Sections 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provide that the Administrator may bring a civil action in accordance with Section 113(b) of the Act whenever, on the basis of any information available, the Administrator finds that any person has violated or is in violation of any other requirement or prohibition of, *inter alia*, (1) the PSD or Nonattainment NSR requirements of the Act; (2) the NSPS provisions of the Act; (3) Title V of

the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or (4) the Ohio SIP or any permit issued thereunder.

39.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes EPA to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring after March 15, 2004; and $37,500 per day for each such violation after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, against any person whenever such person has violated, or is in violation of, *inter alia,* the requirements or prohibitions described in the preceding paragraph.

40.     Section 167 of the Act, 42 U.S.C. § 7477, authorizes EPA to initiate an action for injunctive relief, as necessary to prevent the construction, modification or operation of a major emitting facility which does not conform to the PSD requirements in Part C of Title I of the Act.

## GENERAL ALLEGATIONS

41.     Since at least 1988, Defendant has been the owner and/or operator of the Gorsuch Station located in Washington County, Ohio.  The Gorsuch Station is comprised of four coal-fired electric generating units denominated Units 1, 2, 3, and 4.

42.     At all times pertinent to this civil action, the Gorsuch Station collectively, and Units 1, 2, 3, and 4 individually, were each a "major emitting facility" and a "major stationary source," within the meaning of the Act and the Ohio SIP for $NO_x$, $SO_2$, and PM.  At all times

pertinent to this civil action, the Gorsuch Station was a "major source" within the meaning of Title V of the Act and the Ohio Title V program regulations.

## FIRST CLAIM FOR RELIEF
(PSD Violations at the Gorsuch Station)

43.     Paragraphs 1 through 42 are realleged and incorporated herein by reference.

44.     At various times, Defendant or a prior owner and operator of the Gorsuch Station commenced construction of major modifications, as defined in the Act and Ohio SIP, at the Gorsuch Station.  These major modifications included one or more physical changes or changes in the method of operation at Units 1 through 4 of the Gorsuch Station, including, but not necessarily limited to: (1) a comprehensive boiler repair and life extension program conducted between 1981 and 1986, and (2) a comprehensive station improvement and uprate program conducted between 1988 and 1991. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, of one or more of the following pollutants: $NO_x$, $SO_2$, and/or PM.

45.     Defendant did not comply with the PSD requirements in the Act and Ohio SIP with respect to the major modifications at the Gorsuch Station.  Among other things, Defendant failed to obtain a PSD permit for the construction and operation of the major modifications at the Gorsuch Station.  Defendant did not undergo a BACT determination in connection with these major modifications.  Defendant failed to install and operate the best available control technology for control of $NO_x$, $SO_2$, and/or PM, pursuant to such determination, as required by the Act and the Ohio SIP at the Gorsuch Station.

46.     Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a) and the PSD provisions of the Ohio SIP at the Gorsuch Station.  Unless restrained by an order of this Court, these and similar violations of the Act will continue.

12

47.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

SECOND CLAIM FOR RELIEF

(Nonattainment NSR Violations at the Gorsuch Station)

48.     Paragraphs 1 through 42 are realleged and incorporated herein by reference.

49.     At various times, Defendant or a prior owner and operator of the Gorsuch Station commenced construction of major modifications, as defined in the Act and Ohio SIP, at the Gorsuch Station.  These major modifications included one or more physical changes or changes in the method of operation at Units 1 through 4 of the Gorsuch Station, including, but not necessarily limited to: (1) a comprehensive boiler repair and life extension program conducted between 1981 and 1986, and (2) a comprehensive station improvement and uprate program conducted between 1988 and 1991. These modifications resulted in significant net emissions increases, as defined by the relevant Nonattainment NSR regulations, of one or more of the following pollutants: $NO_x$, $SO_2$, and/or PM.

50.     Defendant did not comply with the Nonattainment NSR requirements in the Act and Ohio SIP with respect to the major modifications at the Gorsuch Station.  Among other things, Defendant failed to obtain  a Nonattainment NSR permit for the construction and operation of the major modifications at the Gorsuch Station.  Defendant did not undergo a LAER determination in

13

connection with these major modifications.  Defendant failed to install the required pollution controls pursuant to such determination and operate in compliance with the lowest achievable emission rate for $NO_x$, $SO_2$, and/or PM, as required by the Act and the Ohio SIP at the Gorsuch Station.  In addition, Defendant has not complied with other Nonattainment NSR requirements, including the requirement to obtain and operate with federally enforceable emission offsets at least as great as the modified source's emissions.

51.     Based upon the foregoing, Defendant has violated and continues to violate the Nonattainment NSR provisions of Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515, and OAC Chapter 3745-31.  Unless restrained by an order of this Court, these and similar violations of the Act will continue.

52.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRD CLAIM FOR RELIEF

### (NSPS violations at the Gorsuch Station)

53.     Paragraphs 1 through 42 are realleged and incorporated herein by reference.

54.     At various times, Defendant undertook the "modification" of an "existing facility" at the Gorsuch Station as those terms are defined in the NSPS.  40 C.F.R. §§ 60.2, 60.14.  These

modifications included, but were not necessarily limited to, a comprehensive station improvement and uprate program conducted between 1988 and 1991. These modifications resulted in an increase in net generating capability for each boiler, resulting in hourly emission increases of $NO_x$, $SO_2$, and/or PM.

55.     As a result of these modifications, each of the Gorsuch Units is an "affected facility" and is subject to the NSPS, including provisions of Subpart A and Da of the NSPS. Defendant violated and continues to violate the NSPS by modifying and thereafter operating the Gorsuch units without installing the necessary pollution control technology to achieve, demonstrate, and maintain compliance with the applicable NSPS emission limitations.

56.     Defendant failed to comply and continues to fail to comply with the NSPS emissions limitations applicable to the Gorsuch Station after the modifications listed above for at least one of the following pollutants -- $NO_x$, $SO_2$, and/or PM -- in violation of 40 C.F.R. §§ 60.42a, 60.43a, and 60.44a.

57.     Each day that Defendant fails to comply with each of the NSPS requirements described in this Complaint, constitutes a violation of the NSPS regulations, and the Act. Unless restrained by an order of this Court, these and similar violations will continue.

58.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant

to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

<u>FOURTH CLAIM FOR RELIEF</u>

(Title V Violations at Gorsuch Station - operation with a deficient permit)

59.     Paragraphs 1 through 58 are realleged and incorporated herein by reference.

60.     As set forth above, Defendant undertook activities constituting one or more major modifications at the Gorsuch Station under the PSD and Nonattainment NSR regulations in the Ohio SIP and constituting modification of an existing facility under NSPS. As a result, these modifications triggered the requirements to, *inter alia*, undergo a BACT or LAER determination, to obtain a PSD or Nonattainment NSR permit establishing emissions limitations that meet BACT or LAER requirements pursuant to such a determination, and to operate in compliance with such limitations as well as NSPS limitations. Defendant failed to satisfy these requirements.

61.     Subsequently, Defendant failed to submit a complete application for a Title V operating permit for the Gorsuch Station and identify all applicable requirements, accurately certify compliance with such requirements, and contain a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT or LAER pursuant to a determination under PSD or Nonattainment NSR, and to meet the applicable NSPS). Defendant failed to obtain a proper or adequate Title V operating permit for the Gorsuch Station that contained emission limitations for $NO_x$, $SO_2$, and/or PM that met BACT, LAER and/or NSPS. Defendant thereafter operated Gorsuch units 1, 2, 3, and 4 without meeting such limitations and without having a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in

16

compliance. Defendant's conduct violated Sections 502(a), 503(c), and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), and the Title V operating permit program regulations. Unless restrained by an order of this Court, these and similar violations will continue.

62.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FIFTH CLAIM FOR RELIEF

### (Title V Operating Permit Violations at Gorsuch Station)

63.     Paragraphs 1 through 42 are realleged and incorporated herein by reference.

64.     On October 24, 2001, Ohio EPA issued a final Title V permit for the Gorsuch Station. The permit contains various conditions, limitations, and other requirements for operation of the Gorsuch Station, including a requirement that visible particulate emissions shall not exceed 20 percent opacity as a 6-minute average, except as provided by rule, pursuant to Ohio Admin. Code 3745-17-07(A).

65.     At various times, Defendant has operated the Gorsuch Station such that visible particulate emissions exceeded the opacity requirements of the Gorsuch Title V permit, in violation of the Title V permit and Section 502(a) of the Act, 42 U.S.C. § 7661(a). Unless restrained by an order of this Court, these and similar violations will continue.

17

66.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the United States requests that this Court:

1.     Permanently enjoin Defendant from operating the Gorsuch Station, including the construction of future modifications, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2     Order Defendant to apply for New Source Review permits under Parts C and/or D of Title I of the Clean Air Act, as appropriate, that conform with the permitting requirements in effect at the time of the permitting action, for each pollutant in violation of the New Source Review requirements of the Clean Air Act.

3.     Order Defendant to remedy its past violations by, among other things, requiring Defendant to install and operate the best available control technology or lowest achievable emission rate, as appropriate, at the units subject to this action, for each pollutant in violation of the New Source Review requirements of the Clean Air Act;

4.     Order Defendant to apply and/or amend applications for permits that are in conformity with the requirements of the Title V program;

18

5.      Order Defendant to comply with the NSPS provisions of the Act and the NSPS regulations;

6.      Order Defendant to achieve, maintain, and demonstrate compliance with the CAA and applicable requirements established thereunder, including provisions of the Title V permit and Ohio SIP requirements described above;

7.      Order Defendant to conduct audits of its operations to determine if any additional modifications have occurred that would require it to meet the requirements of NSPS, PSD or Nonattainment NSR, as appropriate, and report the results of these audits to the United States;

8.      Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

9.      Assess a civil penalty against Defendant of up to $25,000 per day for each violation of the Clean Air Act and applicable regulations occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009;

10.     Award Plaintiff its costs of this action; and,

11.     Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

Dated: May __16__, 2010

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division


Jason A. Dunn
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Phone: (202) 514-1111
Facsimile:  (202) 616-6583


CARTER M. STEWART
United States Attorney for the
   Southern District of Ohio

MARK D'ALESSANDRO (0019877)
Local Counsel
Assistant United States Attorney
280 North High Street, Fourth Floor
Columbus, Ohio  43215
Phone:  (614) 469-5715
Facsimile:  (614) 469-5240

20

OF COUNSEL:
TOM M. WILLIAMS
ERIK OLSON
Associate Regional Counsel
Office of Regional Counsel (C-14J)
U.S. EPA, Region 5
77 W. Jackson Boulevard
Chicago, Illinois 60604-3590

SEEMA KAKADE
Attorney-Advisor
U.S. EPA
1200 Pennsylvania Ave., N.W.
Washington, DC 20460